1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LYNN SUSAN BRAGER,                        No.  2:20-cv-1092 DB

12              Plaintiff,

13       v.                                     ORDER

14    KILOLO KIJAKAZI, Acting
      Commissioner of Social Security,[1]
15

16              Defendant.

17

18        This social security action was submitted to the court without oral argument for ruling on

19  plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20  Plaintiff's motion argues that the Administrative Law Judge erred with respect to the treatment of

21  the medical opinion evidence, plaintiff's testimony, in determining plaintiff's residual functional

22  capacity, and at step four of the sequential evaluation.

23  ////

24

25  [1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social
    Security and has, therefore, been substituted as the defendant.  See 42 U.S.C. § 405(g) (referring
26  to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
    Commissioner shall, in his official capacity, be the proper defendant").
27
    [2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
28  pursuant to 28 U.S.C. § 636(c).  (See ECF No. 11.)

1    For the reasons explained below, plaintiff's motion is granted, the decision of the

2    Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for

3    further proceedings.

4                                    **PROCEDURAL BACKGROUND**

5        On August 31, 2017, plaintiff filed an application for Disability Insurance Benefits

6    ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on

7    October 2, 2016.  (Transcript ("Tr.") at 10.)  Plaintiff's alleged impairments included chronic

8    back and leg pain, and osteoarthritis.  (Id. at 63.)  Plaintiff's application was denied initially, (id.

9    at 87-91), and upon reconsideration.  (Id. at 97-101.)

10       Plaintiff requested an administrative hearing and a hearing was held before an

11   Administrative Law Judge ("ALJ") on February 12, 2019.  (Id. at 23-51.)  Plaintiff was

12   represented by an attorney and testified at the administrative hearing.  (Id. at 23-30.)  In a

13   decision issued on March 28, 2019, the ALJ found that plaintiff was not disabled.  (Id. at 18.)

14   The ALJ entered the following findings:

15           1. The claimant last met the insured status requirements of the Social
             Security Act on December 31, 2018.
16
             2. The claimant did not engage in substantial gainful activity
17           during the period from her alleged onset date of October 2, 2016,
             through her date last insured of December 31, 2018 (20 CFR
18           404.1571 *et seq.*).

19           3. Through the date last insured, the claimant had the following
             severe impairments: status post left knee total arthroscopy
20           replacement; right knee osteoarthritis; status post lumbar surgery;
             and right foot degenerative joint disease (20 CFR 404.1520(c)).
21
             4. Through the date last insured, the claimant did not have an
22           impairment or combination of impairments that met or medically
             equaled the severity of one of the listed impairments in 20 CFR Part
23           404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and
             404.1526).
24
             5. After careful consideration of the entire record, I find that, through
25           the date last insured, the claimant had the residual functional capacity
             to perform sedentary work as defined in 20 CFR  404.1567(a) except
26           can  stand  and/or  walk  two  out  of  eight  hours;  sit  foronly [sic]
             occasional ramps or stairs; no ladders, ropes or scaffolds; frequent
27           balance; and occasional stoop, kneel, crouch, or crawl.

28   ////

1

2
3
4

> 6.   Through the date last insured, the claimant was capable of performing past relevant work as a project manager.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

5
6

> 7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from October 2, 2016, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(f)).

7   (Id. at 12-17.)

8   On April 24, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's

9   March 28, 2019 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. §

10   405(g) by filing the complaint in this action on May 30, 2020.  (ECF. No. 1.)

11   **LEGAL STANDARD**

12   "The district court reviews the Commissioner's final decision for substantial evidence,

13   and the Commissioner's decision will be disturbed only if it is not supported by substantial

14   evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

15   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

16   support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

17   Chater, 108 F.3d 978, 980 (9th Cir. 1997).

18   "[A] reviewing court must consider the entire record as a whole and may not affirm

19   simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

20   466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

21   1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

22   reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d 1072,

23   1075 (9th Cir. 2002).

24   A five-step evaluation process is used to determine whether a claimant is disabled. 20

25   C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

26   process has been summarized as follows:

27
28

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

3

1

2

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

3

4

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

5

6

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.

7

8

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

9   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

10   The claimant bears the burden of proof in the first four steps of the sequential evaluation

11   process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

12   if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

13   1098 (9th Cir. 1999).

14                                          **APPLICATION**

15   Plaintiff's pending motion argues that the ALJ committed the following four principal

16   errors: (1) the ALJ's treatment of plaintiff's testimony constituted error; (2) the ALJ erred at step

17   four of the sequential evaluation; (3) the ALJ's residual functional capacity determination was

18   erroneous; and (4) the ALJ's treatment of the medical opinion evidence constituted error.[3]  (Pl.'s

19   MSJ (ECF No. 15-1) at 16-28.[4])

20   **I.      Plaintiff's Testimony**

21   The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's

22   credibility as follows:

23

24

25

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

26   _____

[3] The Court has reordered plaintiff's claims for sake of clarity and efficiency.

27

28   [4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1

2

3

4

> symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

5

6

7

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

8   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

9   omitted).  "The clear and convincing standard is the most demanding required in Social Security

10  cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At

11  the same time, the ALJ is not required to believe every allegation of disabling pain, or else

12  disability benefits would be available for the asking[.]"  Molina v. Astrue, 674 F.3d 1104, 1112

13  (9th Cir. 2012).

14       "The ALJ must specifically identify what testimony is credible and what testimony

15  undermines the claimant's complaints."  Valentine v. Commissioner Social Sec. Admin., 574

16  F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

17  599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other

18  things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

19  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

20  record, and testimony from physicians and third parties concerning the nature, severity, and effect

21  of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59

22  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

23  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

24  record, the court "may not engage in second-guessing."  Id.

25       Here, the ALJ recounted plaintiff's testimony as follows:

26

27

> The claimant is a sixty year old female with a tenth grade education. She alleges she suffers from chronic back and leg pain continue after back surgery, osteoarthritis in left knee, and the inability to sleep well

28  ////

5

1
2

at night.  In addition, she takes medications which cause sleepiness, twitching, and cramps.  She last worked December 8, 2016, as a production manager, but stopped because of her conditions.

3
4
5
6
7
8
9
10
11

The claimant testified she is unable to work because of her back and knee pain.  She has to elevate her knee and foot.  She cannot remain in one position for long periods.  Her pain interferes with sleep, and while she takes medications they leave her feeling groggy.  She is most comfortable laying on her back or in a recliner.  She can assist with grocery shopping, but is usually unable to finish shopping throughout the store and has to sit down.  She was wearing a boot on her right foot at the hearing and testified she needs to undergo surgery in the future.  She has ongoing bilateral knee pain, worse on the right.  She has experienced residual lumbar pain, radiating into the lower extremities, after surgery in October 2016.  She explained a postoperative MRI revealed scar tissue in the spine.  She is able to perform light household chores including cleaning the floors and dusting.  She can sit up to forty five minutes and stand up to a half hour.  However, she has some days when she cannot even perform these tasks for that long.  She further estimated she has to lay down three to four times a day to relieve pain.

12   (Tr. at 13-14) (citations omitted).

13   The ALJ found that plaintiff's medically determinable impairments could reasonably be

14   expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity,

15   persistence, and limiting effects of those symptoms were "not entirely consistent with the medical

16   evidence and other evidence in the record for the reason explained in [the] decision."[5]  (Id. at 14.)

17   The ALJ conceded that plaintiff had "received various forms of treatment, conservative

18   and surgical, for her impairments," but rejected plaintiff's testimony by finding, in part, that

19   plaintiff's treatment had been "generally successful in controlling her symptoms and improving

20   her functioning."  (Id. at 14.)  However, that a patient's symptoms improve and/or stabilize with

21   treatment does not mean that the impairments would no longer be present in a work setting.  See

22

23   [5] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's
     credibility determination" before "identify[ing] what parts of the claimant's testimony were not
24   credible and why."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir.
     2014).  "The use of this generic language is not itself reversible error . . . but it inverts the
25   responsibility of an ALJ, which is first to determine the medical impairments of a claimant based
     on the record and the claimant's credible symptom testimony and only then to determine the
26   claimant's RFC.  By rejecting a claimant's subjective symptoms 'to the extent they are
     inconsistent with the above residual functional capacity assessment,' the agency indicates that it
27   is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain
28   into the RFC finding, as it is required to do."  Trevizo, 871 F.3d at 679 n.6.

1  Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner

2  erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,'

3  because doing well for the purposes of a treatment program has no necessary relation to a

4  claimant's ability to work or to her work-related functional capacity.").

5       The ALJ also asserted that plaintiff's "subjective allegations [were] inconsistent with the

6  medical evidence and other evidence in the record."  (Tr. at 15.)  However, "after a claimant

7  produces objective medical evidence of an underlying impairment, an ALJ may not reject a

8  claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate

9  the alleged severity" of the symptoms.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see

10  also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective

11  medical evidence to demonstrate the severity of her fatigue."); Perez v. Astrue, 247 Fed. Appx.

12  931, 936 (9th Cir. 2007) ("That the degree of Perez's subjective complaints were not corroborated

13  by the objective clinical findings in the ALJ's view was of no legal moment because pain is

14  inherently an individual phenomenon."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991)

15  ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce

16  medical evidence supporting the severity of the pain, there would be no reason for an adjudicator

17  to consider anything other than medical findings.").

18       The ALJ also relied on plaintiff's "daily activities" as a basis for rejecting plaintiff's

19  testimony.  (Tr. at 14.)

20          The critical differences between activities of daily living and
            activities in a full-time job are that a person has more flexibility in
21          scheduling the former than the latter, can get help from other persons
            ... and is not held to a minimum standard of performance, as she
22          would be by an employer.  The failure to recognize these differences
            is a recurrent, and deplorable, feature of opinions by administrative
23          law judges in social security disability cases.

24  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).  In this regard, the Ninth Circuit "has

25  repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as

26  grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from

27  her credibility as to her overall disability.  One does not need to be utterly incapacitated in order

28  to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison v.

1    Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (citation omitted) ("[I]mpairments that would

2    unquestionably preclude work and all the pressures of a workplace environment will often be

3    consistent with doing more than merely resting in bed all day.").

4            For the reasons stated above, the Court finds that the ALJ failed to offer a clear and

5    convincing reason for rejecting plaintiff's testimony.  Accordingly, plaintiff is entitled to

6    summary judgment on this claim.

7    **II.      Step Four Error**

8            Plaintiff also argues that the ALJ erred at step four of the sequential evaluation by finding

9    that plaintiff could do past relevant work as a project manager.  (Pl.'s MSJ (ECF No. 15-1) at 25-

10   28.)  In making this finding, the ALJ explicitly relied on the testimony of a vocational expert in

11   response to a hypothetical question from the ALJ.  (Tr. at 17.)  While an ALJ may pose a range of

12   hypothetical questions to a vocational expert ("VE") based on alternate interpretations of the

13   evidence, the hypothetical question that ultimately serves as the basis for the ALJ's

14   determination, i.e., the hypothetical question that is predicated on the ALJ's final residual

15   functional capacity assessment, must account for all of the limitations and restrictions of the

16   particular claimant.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

17           When an ALJ's hypothetical question fails to set forth all of a plaintiff's impairments

18   supported by the evidence "the vocational expert's testimony cannot constitute substantial

19   evidence to support the ALJ's findings."  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

20   1984); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir.

21   2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's

22   impairments, the vocational expert's testimony cannot constitute substantial evidence to support

23   the ALJ's findings.").

24           Here, because the ALJ improperly rejected plaintiff's testimony, the ALJ's hypothetical

25   question to the VE did not account for plaintiff's limitations that were consistent with the medical

26   evidence and supported by plaintiff's testimony.  Moreover, at the February 12, 2019 hearing the

27   VE testified that an "individual of the same . . . education" as plaintiff, could perform the job of

28   project manager, DOT number 189.117-030, not as plaintiff performed that job "but . . . as it's

1  typically performed." (Tr. at 43-44.)  The ALJ ultimately found that plaintiff could perform past

2  relevant as a project manager "as generally performed in the regional and national economy but

3  not as actually performed" by plaintiff "based on the testimony of the vocational expert."  (Id. at

4  17.)

5        According to the Dictionary of Occupational Titles, the job of project manager as it is

6  typically performed requires the use of algebra, calculus, and statistics.  Specifically, the job

7  requires:

8        Reasoning: Level 5 - Apply principles of logical or scientific
      thinking to define problems, collect data, establish facts, and draw
9      valid conclusions.   Interpret an extensive variety of technical
      instructions in mathematical or diagrammatic form.   Deal with
10     several abstract and concrete variables.

11     Math: Level 5 - ALGEBRA: Work with exponents and logarithms,
      linear equations, quadratic equations, mathematical induction and
12     binomial theorem, and permutations.

13     CALCULUS: Apply concepts of analytic geometry, differentiations,
      and integration of algebraic functions with applications.

14

15     STATISTICS: Apply   mathematical   operations   to   frequency
      distributions, reliability and validity of tests, normal curve, analysis
      of variance, correlation techniques, chi-square application and
16     sampling theory, and factor analysis.

17  DICOT 189.117-030.  Plaintiff, however, possessed only a high school proficiency.  (Tr. at 30.)

18        In this regard, it is apparent that the VE's testimony that plaintiff could perform the job of

19  project manager conflicted with the DOT's requirement for that work.  "When there is an

20  apparent conflict between the VE's testimony and the Dictionary of Occupational Titles

21  ("DOT")—for example, expert testimony that a claimant can perform an occupation involving

22  DOT requirements that appear more than the claimant can handle—the ALJ is required to

23  reconcile the inconsistency." Zavalin, 778 F.3d at 846.  Here, the ALJ did not question the VE

24  concerning that conflict.

25        Because of the failures noted above the VE's testimony cannot constitute substantial

26  evidence to support the ALJ's step four finding.  See March v. Commissioner of Social Sec.

27  Admin., 462 Fed. Appx. 671, 674 (9th Cir. 2011) ("The ALJ's errors in constructing his RFC

28  assessment preclude affirmance of his finding at Step 4.  Because the RFC was defective, so were

1    the hypothetical questions that the ALJ posed to a vocational expert at the hearing, and so were

2    the VE's answers.  The VE's testimony cannot constitute substantial evidence in such

3    circumstances . . .  and the ALJ's finding at Step 4 was premised on nothing else."); Pruett v.

4    Colvin, 85 F.Supp.3d 1152, 1158 (N.D. Cal. 2015) ("Here, because the ALJ did not question the

5    vocational expert concerning the apparent conflict between the vocational expert's testimony and

6    the DOT, there is no evidence in the record that plaintiff can perform the light work required of a

7    small products assembler.").

8        For the reasons stated above, plaintiff is also entitled to summary judgment on this claim.

9                                **CONCLUSION**

10       After having found error, "'[t]he decision whether to remand a case for additional

11   evidence, or simply to award benefits[,] is within the discretion of the court.'"[6]  Trevizo v.

12   Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232

13   (9th Cir. 1987)).  A case may be remanded under the "credit-as-true" rule for an award of benefits

14   where:

15           (1) the record has been fully developed and further administrative
             proceedings would serve no useful purpose; (2) the ALJ has failed to
16           provide legally sufficient reasons for rejecting evidence, whether
             claimant testimony or medical opinion; and (3) if the improperly
17           discredited evidence were credited as true, the ALJ would be
             required to find the claimant disabled on remand.
18

19   Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

20       Even where all the conditions for the "credit-as-true" rule are met, the court retains

21   "flexibility to remand for further proceedings when the record as a whole creates serious doubt as

22   to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  Id. at

23

24   [6] Having already identified an error requiring remand, in light of plaintiff's request for remand for
     further hearing, and review of the record the Court finds it unnecessary to reach plaintiff's
25   remaining claims of error.  See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673,
     at *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court
26   need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853
     DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the
27   decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not
     address Plaintiff's remaining contentions.").
28

                                    10

1    1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court

2    concludes that further administrative proceedings would serve no useful purpose, it may not

3    remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,

4    775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is

5    uncertain and ambiguous, the proper approach is to remand the case to the agency.").

6           Here, plaintiff argues that this matter should be remanded for further proceedings and the

7    Court agrees.  (Pl.'s MSJ (ECF No. 21) at 10.)

8           Accordingly, IT IS HEREBY ORDERED that:

9           1.  Plaintiff's motion for summary judgment (ECF No. 15) is granted;

10          2.  Defendant's cross-motion for summary judgment (ECF No. 20) is denied;

11          3.  The Commissioner's decision is reversed;

12          4.  This matter is remanded for further proceedings consistent with the order; and

13          5.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

14   Dated:  March 28, 2022

15

16

17                                                    DEBORAH BARNES
                                                      UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25   DLB:6
     DB\orders\orders.soc sec\brager1092.ord
26

27

28

11